†RUSH R. SLOANE V. PEOPLE'S ELECTRIC RY. CO. ET AL.

1. APPLICATION FOR FRANCHISE BEFORE CORPORATION ORGANIZED—INVITATION FOR BIDS BEFORE ACTION OF COUNCIL.

A street railway corporation to which, after it was fully organized, municipal authorities have, in good faith, granted the right to construct and operate an electric street railway, will not be enjoined from exercising the right simply because the application to the city for the franchise was filed before the articles of incorporation of the railway company had reached the secreaty of state; nor because the city clerk caused said application and invitation for bids to construct such railway without any action having

---

†Cited in Gallagher v. Johnson, 1 Ohio Dec., 264, 265; Aydelott v. Cincinnati, 4 Ohio Circ Dec., 486, 487 Glidden v. Cincinnati, 4 Ohio Dec., 423, 427.

been taken by the city council directing such publication where the council afterwards recognizes and acts upon such publication.

**2. IRREGULARITIES IN OPENING AND CONSIDERING BIDS.**

The city council may properly adopt reasonable regulations as to the form of bids and as to the time when bidding shall close, but in the absence of such regulations, if the application is published for the time required by the statute, and the council, acting in good faith, after the expiration of that time, make the grant to the only bidder therefor, and whose bid is reasonable, the exercise of such franchise will not be enjoined on account of irregularities on the part of the council in opening and considering such bid.

**3. CONSENTS NEED NOT BE BEFORE CALL FOR BIDS, NOR AS TO CONSTRUCTION.**

It is not necessary to the validity of such grant that the number of consents of abutting property owners required by the statute should have been obtained prior to the publication of the notice inviting bids for the construction and operation of such railway; nor that such consents should be to the mode and manner of such construction and operation.

**4. IRREGULARITIES MUST BE JURISDICTIONAL OR JUSTICE DEMAND INTERFERENCE.**

An action for such injunction, brought by a tax-payer under the provisions of sec. 1778, Rev. Stat., cannot be sustained unless the defects or irregularities in the proceedings which are complained of are plainly jurisdictional, or are of such a nature that "the equity and justice of the case demand" the interference of the court. (See sec. 1779.) But if the suit, though unsuccessful, seem to be justified, costs may be apportioned.

**5. ORDINANCE ESTABLISHING ROUTE NOT NECESSARY.**

It is not necessary that there be an ordinance establishing the route, nor is it such a one as could not be operative until ten days after publication.

**6. ABSENCE OF BOND ACCOMPANYING BID MAY BE WAIVED.**

In such action the plaintiff will not be heard to complain that the bond accompanying the bid was not such as the city ordinance prescribing the route and providing for the publication of notice inviting bids required, when the council, acting in good faith, have accepted the bid, granted the franchise to the bidder upon terms and conditions prescribed in the ordinance making the grant, which terms the railway company have accepted and complied with. The object of requiring such bond being to show the good faith of the bidder, the giving of it may be waived by the council, where such waiver is made in good faith and no favoritism is thereby practiced and no injury to the city results therefrom.

### Appeal from the Court of Common Pleas of Erie County.

This case was tried in the circuit court on appeal from the Court of Common Pleas of Erie county. By the pleadings and proof, it appears that the plaintiff, Sloane, is a resident tax-payer of the city of Sandusky, and resides there on property which he owns on Franklin street, a street 66 feet in width, and that before 1880 he had placed a building and other improvements on his said premises which were accessible from no other highway than Franklin street, and that by permission of the council of said city, granted to him, and other property owners, he had, at his own expense, constructed an expensive stone sidewalk along the side of the street in front of his premises, with a grass plot between that and the curb which he had also put in the street, and other of abutting property had also improved the street in that vicinity so as to make it a boulevard with a public driveway in the center between the curb-stones of only 36 feet. On August 17, 1891, articles for the incorporation of The People's Electric Railway Company were executed in due form of law by certain nine persons, residents of said city, and forwarded, on that day, to the secretary of state at Columbus. In the evening of that day, at the request of all said incorporators, one of their number signed the name, "The People's Electric Railway Company," to a written application to the council of said city for leave to construct, maintain and operate an electric railway over a route including several streets and parts of streets in said city and therein named, including said Franklin street, and on the same evening filed the same with the city clerk to be presented to said council, and at the same time said agent of said incorporators filed with said clerk another paper signed by several property owners also designating said proposed route and asking the council to grant permission to said electric street railway company to construct and operate said street railway over said route as asked for by the said company.

Some days therafter and before October 1, 1891, said corporation was duly organized by the election of directors and officers according to law.

Prior to September 9, 1891, the council had passed no general ordinance regulating the construction, management and operation of street railroads, but on said last named day it passed an ordinance establishing "Street Railroad Route No. 2," being the same route mentioned in said application, and that ordinance provided that the city clerk should advertise for three consecutive weeks for sealed proposals to construct and operate a street railroad on said route, within the time to be specified in said advertisement, and that each bid should be accompanied by a bond in the sum of $10,000, conditioned for the construc-

tion of the road within said time, in case the bid should be accepted. Said ordinance provided that it should take effect and be in force "from and after its passage and due publication." This ordinance did not prescribe the manner in which said railway should be constructed, maintained or operated. It was published for the first time on September 10, 1891.

On said last-named day, the city clerk, without other direction by the council than said order contained in said ordinance, caused to be published in two newspapers of said city a notice by him signed, stating that sealed proposals would be received at his office until 12 o'clock, noon, Thursday, October 1, 1891, for the construction and operation of street railroad Route No. 2, and describing said route as in said application and ordinance, and stating that "bids must be made with reference to the terms and conditions upon which said route may be constructed and operated as contained in ordinance passed September 9, 1891, establishing said route, which is on record in this office and should specify the lowest rates of fare for which the bidder proposes to carry passengers over said route; viz: Single cash fare, number of commutation tickets in packages for one dollar, number for fi ty cents, and number for twenty-five cents, and such other advantages as such company may propose to give to the citizens of said city. Said proposals must be accompanied by a bond in the sum of $10,000, conditioned for the proper construction of said Route No. 2, within one year after the passage of the ordinance granting permission to construct and operate said street railroad." And said notice was so published for three consecutive weeks. After September 10, 1891, and before October 1, 1891, said the People's Electric Street Railway Co. filed with said clerk its bid for the construction and operation of said railroad, and the rates of fare it would charge, and with its bid, filed the bond required by said notice; no other bid was filed under said notice. On October 9, 1891, the council accepted said bid, and passed an ordinance authorizing said company to construct, maintain and operate an electric street railway over said route, and prescribing with great care and detail the mode of its construction and operation and the rates of fare to be charged. This ordinance was published October 10, 1891, and shortly thereafter the plaintiff procured an injunction restraining said company from proceeding with said work, on the ground that at the time of the passage of the ordinance making said grant, the requisite number of w i ten consents by property owners on said Franklin street had not been produced to the council, or obtained. And the proof shows, and the answer admits, that the requisite number of such consents had not at that time been obtained. Thereupon said company procured other written consents, of other property owners on said street, so that, with those previously obtained, the written consents of more than a majority of such owners reckoned by the feet front of lots abutting on that part of said Franklin street covered by said route was obtained and produced to said council on or prior to November 9, 1891.

On November 7, 1891, three members of said council called a special meeting of the council for the evening of November 9, and caused the city clerk to issue the following notice:

"To ——————.

Sir: You are hereby notified that there will be a special meeting of the city council on the 9th day of November, 1891, at 7:30 o'clock P. M.

A. W. MILLER, City Clerk.

Object: To take into consideration matters connected with the People's Electric Railway Company."

A copy of this notice was served on each member of the council on said November 7 with the blank filled with his name. Fifteen of the twenty members composing said council attended said meeting, and by suspending the rules as to reading on three different days, passed an ordinance like that of said October 9, and providing that that ordinance should be repealed, and that this ordinance should take effect and be in force from and a ter its passage and due publication.

This ordinance was duly published on November 10, 1891, and said defendant company filed its written acceptances of the provisions of the ordinance on November 10th and 16th respectively, and was proceeding with the construction of the road in the center of said street, when, on November 20, 1891, the petition in this case was filed for an injunction restraining it therefrom, the plaintiff having in writing requested the city solicitor to bring the action, and he having refused.

The main questions raised are noticed in the opinion.

BENTLEY, J.

There are, in reality, two plaintiffs in this action whose respective rights are distinct and, in some degree, different; namely, Judge Sloane as an owner of property abutting on the proposed railroad route, and the city of Sandusky, whose rights are asserted by a taxpayer under sec. 1778 of the Rev. Stat.

There are two alleged causes of action. Whether these dual aspects of the case render the petition obnoxious to the objections the remedy wherefor is pro-

vided in paragraphs four or six of sec. 5062 we need not now inquire, since, under the provisions of sec. 5064, such objections have been waived. Nevertheless, the court, in disposing of the case, must necessarily have regard to the distinct rights whose violation is alleged in the petition.

. Of the said objections to the proceedings of the council and the defendant railway company, complained of in the petition, the one which the plaintiff Sloane as an abutting property holder can legally urge is that the consents in writing of the abutting-property holders on Franklin street, made by sec. 2502 a pre-requisite to the making of a grant of the right to construct and operate a street railway therein, were not obtained prior to the adoption of the ordinance of November 9, 1891, granting the franchise to said defendant railway company, or were not obtained at the proper stage of said proceedings looking to the making of such grant.

On the question of fact presented by the evidence we find that the written consents of the requisite majority of abutting property holders had been obtained, and were before the council prior to the adoption of the said ordinance of November 9, 1891.

We cannot concur in the views of the plaintiff and his counsel that such consents must be obtained before the time of the publication of the notice inviting bids to construct and operate the railway, nor in their claim that the statute requires the property holders' consent to the mode and manner of the construction and operation of the street railroad. The terms of the statute do not, as we think, require this, and many reasons suggest themselves why such could not have been the intention of the legislature. Among these would be the limitations which that interpretation would impose on the power and right of the council to prescribe regulations for street railways and "the terms and conditions upon, and the manner in which the road should be constructed and operated." Certainly the council should be free at the time of the passage of the grant finally to determine the conditions which it should impose.

Our conclusions on the case generally as made by the plaintiff Sloane as a property holder are adverse to his right to any decree in his favor.

The other branch of the case presents the rights of the city to enjoin operations under a grant made by its council, since, under sec. 1777 et seq., that is the nature of the action which the tax-payer, on the refusal of the city solicitor, may maintain.

In case the plaintiff's contention is sustained, the order is to be such "as the equity and justice of the case demand." (sec. 1779.) This indicates the scope and purpose of the inquiry by the court and suggests the rules by which the court is to judge of the effect of any irregularities or defects which the record of the proceedings of the council or the evidence may present.

We hold that the defendant company, when it made its application on August 17, 1891, though not organized by the election of directors, was capable of receiving a grant, and that its application and that of Gotlieb Zimmerman and others, filed at the same time and by the same person and referring each to the other, are to be considered together, and that when so taken they constitute a legal application, and, at all events, there is no question but that when the grant complained of was finally made to the defendant company, it was fully organized, and we are unable to see how, in such case, the city or the plaintiff or any person could be injured by any such defect in the application as is claimed.

The statute provides in terms, for one notice only, namely, the publication of the "application" for at least three weeks, and, while it would certainly be proper and, perhaps, more orderly for the council by resolution or otherwise to prescribe the terms and general conditions upon which the railroad should be constructed and operated, and to make a definite order as to the form of bids, and as to the

time when bidding should close, yet, we think the power of the council to make a grant does not depend upon its following this course.

It is to be inferred from the provisions of the statute that the clerk may proceed to publish it. The statute itself prescribed the minimum time of the publication, the papers in which it shall be published, and the person to publish it. And we cannot see that the object contemplated by the legislature to be gained by the publication would fail of accomplishment if it be made for the time and in the manner pointed out without a direct authority of the council, especially if the council afterwards recognize it and act upon it. The statute requires the franchise to be granted, if granted at all, to the lowest bidder as to fares, but provides no way for the council to ascertain the lowest bidder except by such invitation for bids as may be inferred by the publication of the "application." True, as we have heretofore held in the Simmons case, 4 Ohio Circ. Dec. 69, it would be competent for the council, for the purpose of securing good faith on the part of bidders, to require some security or proof that the bidder intended, if his bids were accepted, to build and operate the road, and it might prescribe a reasonable limit to the time when bidding should close (not within the time prescribed by the statute for the publication of the application), but the end and aim of all such regulations so far as the city is concerned, is to secure the proper use of its streets for the advantage of its citizens and the use of the railway at the lowest rates of fare reasonably attainable. If in the carrying out of rules and measures voluntarily self imposed by the city, through its council, there should be defects and irregularities, how could that result in wrong to the city itself, if the council, acting in good faith, should deem such defects immaterial and innoxious as to affecting the final result sought?

It is to be noted that in the petition there is an entire absence of averment that the action of the council or of any person concerned was in any way in bad faith, and no suggestion is made that but for the irregularities mentioned, any more favorable bids, or any other bids whatever would have been or would probably have been received. Any chances that bids more advantageous to the city or its citizens would have been secured from a more orderly proceeding must be gathered, if gathered at all, by necessary or, at least, reasonable inferences arising from a consideration of the nature of the defects themselves.

It is to be borne in mind that this street railroad is not an improvement to be made by the city or to be by it paid for. It is largely a private enterprise, and the city's interests in it are mainly to see that no improper use of, or obstruction in its streets occurs, and that the privilege of constructing the road shall be granted to the one who will agree to carry passengers at the lowest rates of fare. The rights of bidders under these provisions are not such as may be acquired by bidders for improvements, etc., undertaken by public authorities and to be paid for by them. When the council has ascertained that a certain bid offers the lowest rates of fare, the bidder has no absolute right to a grant. It is still wholly within the discretion of the council whether it will make a grant at all, and if so, on what terms and conditions (see State v. Bell, 34 O. S., 197, 198, and State v. Henderson, 38 O. S., 649, 650). But it is not the rights of bidders which the plaintiff is urging, but of the city.

The ordinance of September 9, establishing a street railway route, though proper, was not necessary. We do not regard it as such an ordinance as could not legally become operative until ten days after its publication, but it was competent for the council itself to fix the time when it should take effect. The ordinance provides that it shall "take effect and be in force from and after its passage and due publication." Since the council might have provided that it should take effect upon its passage, its intention must determine when it did or was to take effect. If "due publication" be construed as such publication as is required by law, and

no publication be required by law, there might be support for the claim that it took effect from its passage. On the other hand, it might fairly be argued that the council evidently supposed it such an ordinance as must be published, and if so, it would take effect ten days thereafter, and hence that must be deemed to have been the intention of the council. The ordinance must be held to speak from the time it legally took effect, and the acts therein provided should be done after that time. But in our view of the matter, it is unnecessary for us to determine, whether, under this ordinance, the time for bidding was voluntarily extended by the council to October 1, 2 or 12. There is no averment, proof, or necessary inference that any wrong or injury resulted to the city by reason of any irregularity of the council or the clerk, or by the form of notice, nor that any person was thereby prevented or dissuaded from bidding, or that the bid accepted was for higher rates of fare than otherwise it would have been.

The bond required was extra-statutory, and the requirement for it might be waived by the council which had exacted it, if it acted in good faith in so doing, and no rights were violated thereby. (See report of Simmons case, *supra*.) The notice for the special meeting of November 9 was sufficient. The rules previously adopted by the council for its government, to be available for the purpose for which they are invoked on this trial, should, probably, have been pleaded, but whether this be the true view or not, the rules were, by the requisite vote, suspended. This vote suspended the general rule of the statute regarding the reading of proposed ordinances and the rules of the council as to procedure as well.

We are at a loss to conjecture how the repeal of the ordinance of October 8 by that of November 9, which re-enacted it, can found any claim of injury by the city, especially if it be true, as it is urged, that the ordinance of October was void. If rights in the defendant company were thereby created, it and those succeeding to its rights might complain, but not the city. Certainly the city acquired no right under it which was not fully preserved by the ordinance of November 9th. Neither can we suppose that the provisions of the ordinance of November 9, 1891, regarding packages, baggage and mails were injurious to the city or its citizens. These provisions did not, so far as is shown, increase the rate of passenger fare, and on the face of them these provisions would seem advantages in addition to those regarding rates of fare.

Our conclusion is that no case of injury or prejudice to the city or to its citizens has been made out.

The petition is therefore dismissed and the injunction dissolved. Some defects and irregularities in the proceedings were shown which might reasonably be regarded by the plaintiff as fatal to the legality of the said grant and the proposed acts of the defendant company, and we find that the plaintiff had reason to and did believe his allegations in behalf of the city to be true. The costs, so far as they accrued from the commencement and prosecution of his action as a property holder should be paid by him. The costs on the other branch of the action should be apportioned, partly to him and partly to the city. As it would be difficult, at least, to ascertain the amount of the costs made on each branch of the petition, we adjudge that the plaintiff Sloane pay one-half of the entire costs, and that the residue be paid by the city of Sandusky. It is also ordered that a special mandate be sent to the court of common pleas of this county for execution for costs.

Rush R. Sloane, *in pro. per.*, and Colver & King, attorneys for plaintiff.

John F. McChrystal, City Solicitor of the City of Sandusky, Barton Smith and Goodwin, Goodwin & Hull, attorneys for Railway Co.